IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARLENE FLOCCO | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 10-2084 |
| J.C. PENNEY CORPORATION, INC. | : | |

**SURRICK, J.**                                                                                                  **AUGUST  30 , 2011**

<u>**MEMORANDUM**</u>

Presently before the Court is Plaintiff Marlene Flocco's Motion for a New Trial. (ECF No. 42.) For the following reasons, the Motion will be denied.

**I.     BACKGROUND**

On May 5, 2010, John and Marlene Flocco filed a Complaint seeking damages for negligence and loss of consortium. (Compl. ¶¶ 11-41, ECF No. 1.) The Complaint named two Defendants, J.C. Penney Corporation, Inc. and the Macerich Company d/b/a the Deptford Mall. (*Id.* ¶¶ 1-5.) On May 20, 2010, the parties agreed that Defendant Macerich Company d/b/a the Deptford Mall would be voluntarily dismissed. (ECF No. 7.) After the completion of discovery, a final pretrial conference was held on January 19, 2011. At the conference, counsel for Plaintiffs advised that John Flocco was no longer pursuing his claim for loss of consortium. John Flocco was dismissed from the case on January 26, 2011.

Marlene Flocco's negligence claims arise out of an incident that occurred on June 15, 2008. On that date, Plaintiff was shopping at the J.C. Penney store in the Deptford Mall in Deptford, New Jersey. Plaintiff was riding on a motorized scooter at the time. Plaintiff contends that a red tablecloth on a jewelry display table became entangled in the wheel of her scooter, causing her scooter to tip over, knocking her to the floor. Plaintiff alleges that the injuries she

sustained as a result of this incident eventually caused her to need bilateral knee replacement surgery. Defendant denies that it was negligent in any way. Defendant contends that the tablecloth on the display table was not draped on the floor and that Plaintiff was negligent in causing the incident because she continued to drive her scooter forward after she felt something caught in the wheels. Defendant also denies that Plaintiff's knee replacement surgery was the result of the incident at J.C. Penney.

A jury trial was held on January 24 and 25, 2011. The jury returned a verdict in favor of Defendant J.C. Penney. The jury found that J.C. Penney was not negligent. Plaintiff seeks a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. Plaintiff argues that the jury's verdict is against the weight of the evidence, and inconsistent with the court's instructions. Plaintiff also argues that a new trial is necessary to prevent the injustice that arose as a result of the Defendant's failure to identify former J.C. Penney employee Bryan Young as a witness, and the Court's denial of a request for an adverse inference instruction based on this failure.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 59 permits a court to order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1)(A). Rule 59(a) does not specify the bases upon which a court may grant a new trial, but rather leaves the decision to the discretion of the district court. *See Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir.1992) ("The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court.") (citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)).

The scope of the district court's discretion when adjudicating a Rule 59 motion depends

on whether the motion is based on an error of law or on a verdict alleged to be against the weight of the evidence. *See Klein v. Hollings*, 992 F.2d 1285, 1289-90 (3d Cir. 1993). When the motion involves an evidentiary ruling or point for charge, the trial court has wide latitude in deciding the motion. *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 921-22 (3d Cir. 1986); *see also Klein*, 992 F.2d at 1289-90. The court must determine: (1) whether an error was in fact made; and (2) whether the error was so prejudicial that a refusal to grant a new trial would be inconsistent with substantial justice. *Bhaya v. Westinghouse Elec. Corp.*, 709 F.Supp. 600, 601 (E.D. Pa. 1989). When the verdict is alleged to be against the weight of the evidence, the district court's discretion to order a new trial is much narrower, *Klein*, 992 F.2d at 1290, and the "district court [is cautioned] not [to] substitute its 'judgment of the facts and the credibility of the witnesses for that of the jury.'" *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 211 (3d Cir. 1992) (quoting *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d Cir. 1960)). Since a determination that a jury's verdict is against the weight of the evidence "effects a denigration of the jury system," a court may grant such a motion "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352-53 (3d Cir. 1991) (citing *EEOC v. Del. Dep't Health*, 865 F.2d 1408, 1413 (3d Cir. 1988)). In addition, the type of case involved also factors into the scope of the court's discretion. When the subject matter of the litigation is simple and within a layman's understanding, the district court is given less freedom to scrutinize the jury's verdict than in a case that deals with complex factual determinations. *Id*. at 1352; *see also Lind*, 278 F.2d at 90-91.

**III.     ANALYSIS**

Plaintiff argues that she is entitled to a new trial for two reasons. First, Plaintiff contends that the jury's verdict was against the weight of the evidence. Plaintiff argues that the jury's finding that the Defendant was not negligent was inconsistent with the evidence presented at trial and with the court's instructions. (Pl.'s Mot. ¶¶ 23-25, ECF No. 42.) Specifically, Plaintiff contends that Defendant never denied being negligent and that Defendant did not present any evidence at trial to address negligence, but only presented evidence on the affirmative defenses related to comparative negligence and causation. Plaintiff asserts that the entire trial was about the cause of her injuries and whether her bilateral knee replacement surgery was caused by her fall at J.C. Penney, not whether Defendant was negligent. Second, Plaintiff argues that a new trial is necessary to prevent the injustice that arose from Defendant's failure to identify Bryan Young, a former employee of J.C. Penney, and from the refusal of the court to give an adverse inference instruction based on this missing witness. (*Id.* at ¶¶ 27, 32, 34.)

**A.     Weight of the Evidence**

Plaintiff's theory of the case was that a tablecloth from a display table reached the floor, creating an unreasonable danger to invitees. Plaintiff also contends that the display tables were arranged in a way that made them dangerous to travel between. (*See* Pl.'s Mot. 10.) Plaintiff contends that Defendant did not deny that the tablecloth became entangled in Plaintiff's scooter, and that as a result she sustained an injury to her knee. (*Id.*) Plaintiff argues that the jury's finding of no negligence is inconsistent with the evidence presented at trial.

Clearly J.C. Penney had a duty to protect invitees from foreseeable harm, and to inspect the premises for dangerous conditions. *See Kirschbaum v. WRGSB Assocs.,* 243 F.3d 145, 152

(3d Cir. 2001) (citing *Carrender v. Fitterer*, 469 A.2d 120, 123 (1983)).  However, it is not clear from the evidence that J.C. Penney breached their duty to Plaintiff.  The evidence regarding the circumstances of Plaintiff's accident was conflicting and inconsistent.  For example, Plaintiff testified that most of the tables had tablecloths negligently draped to the floor.  (Trial Tr. 37:24-38:8, Jan. 24, 2011, ECF No. 44.)  However, there was evidence presented to the contrary.  Defense Exhibits 5(a) through 5(e) were photographs that depicted the table in question and several of the surrounding tables.  (Trial Tr. 9:13-11:24, Jan. 25, 2011, ECF No. 45.)  Megan Lamiotte, a loss prevention officer at J.C. Penney testified that after the table had been knocked over it was set back up and the same tablecloth was placed back on the table.  (*Id*. at 9:1-4.)  Lamiotte also testified that the tablecloth in question was the same as the tablecloths used on a number of nearby tables which were all depicted in the photographs that were taken immediately following the incident.  (*Id*. at 11:2-10.)  Through these photographs the jury was able to observe the length of the tablecloths as they appeared on the day of the accident, as well as the length of the actual tablecloth at issue after it was put back on the subject table.

There was also conflicting evidence as to how this accident occurred.  Plaintiff contends that she was stopping at a jewelry display table on her motorized scooter when something became stuck.  (1/24/11 Tr. 18:1-17.)  She testified that even though she felt resistance, she continued to proceed forward.  As she did this, the scooter tipped over and she fell to her knees.  The table and display fell on top of her.  (*Id*. at 18:17-25.)  However, there was also evidence that the accident did not occur as Plaintiff alleges, and that Plaintiff never fell to the ground.  Verna Powell, an employee of J.C. Penney's who works in the jewelry department, testified that on the day of the incident she was working approximately six feet away from Plaintiff.  (1/25/11 Tr. at

26:21-27:13.)  Powell stated that she heard a big bang and when she turned around she saw the display table flip away from Plaintiff who was on her scooter.  (*Id*.)  The merchandise landed on the floor away from Plaintiff.  Megan Lamiotte also testified that she never saw Plaintiff on the floor and that she was sitting in her scooter when Lamiotte arrived at the scene.  (*Id*. at 6:22-23.)  In addition, Lamiotte testified that John Flocco told her that he did not see the accident, but heard a loud bang and turned around.  (*Id*. at 7:5-11.)  When John Flocco testified, however, he stated that he actually saw the accident occur.  (1/25/11 Tr. at 53:23-25.)

In addition, there was conflicting evidence as to the cause of Plaintiff's knee injuries.  In her Motion, Plaintiff contends that Defendant never denied that Plaintiff sustained an injury to her right knee as a result of the incident at J.C. Penney.  Plaintiff asserts that Defendant is "estopped from making such an argument because its medical expert, Dr. Nolan, admitted [P]laintiff sustained an injury to her right knee as a result of the incident at the J.C. Penney store."  (Pl.'s Mot. ¶13.)  However, Dr. Nolan's testimony is not clear as to whether an injury to her knee was the result of the incident at J.C. Penney.  Initially, Dr. Nolan agreed that Plaintiff sustained a contusion to the right knee "as a result of the incident at J.C. Penney."  He then clarified this response by saying "when I'm evaluating somebody who's a patient, if they fall and they tell me they hurt something, in the absence of me seeing something to the contrary, I'll say, okay, well, you contused this, you contused that. . . .  I'm going to assume that if somebody fell, assuming that they fell, that they may have sustained multiple contusions."  (Pl.'s Mot. Ex. A, 48:10-51:23, ECF No. 42-1.)  Dr. Nolan's testimony does not affirmatively state that Plaintiff suffered knee injuries as the result of the incident at J.C. Penney.  In fact, he testified that any contusion that Plaintiff may have suffered in this accident did not aggravate or materially worsen

the pre-existing arthritic condition in her knees. Moreover, the evidence was overwhelming that Plaintiff had a severe and advanced arthritic condition in both knees that had caused her problems for years.

    After considering all the evidence, we are satisfied that the jury's verdict must stand. There was no miscarriage of justice here and the verdict did not shock the conscience. Plaintiff had the burden of proving negligence and causation by a fair preponderance of the credible evidence. If Plaintiff carried her burden of proof, then Defendant had the burden of proving comparative negligence that was the factual cause of Plaintiff's harm. The evidence on these issues was conflicting at best. It was for the jury to determine what the true facts were in this case. There was evidence to support Plaintiff's assertion that Defendant was negligent, but there was also evidence to support Defendant's assertion that this accident occurred because of the negligence of Plaintiff. The jury saw photographs of the tablecloths on the display tables in the department where the accident occurred. These photographs were taken immediately after the accident. The jury heard testimony that called into question the Plaintiff's testimony, and the testimony of her husband. It was the duty of the jurors to assess the credibility of the witnesses and to determine the true facts. "Since the credibility of witnesses is peculiarly for the jury it is an invasion of the jury's province to grant a new trial merely because the evidence was sharply in conflict." *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 89 (3d Cir. 1960). Under all of the circumstances, we are compelled to conclude that the jury's verdict was not against the weight of the evidence. We will not disturb the jury's finding.

### B.     Failure to Identify Bryan Young

Plaintiff argues that a new trial is necessary to prevent the injustice that arose from Defendant's failure to identify Bryan Young, a former employee who had some involvement in the investigation of the accident.  (Pl.'s Mot. ¶¶ 27, 34.)  Plaintiff also suggests that the refusal to give an adverse inference instruction based on Defendant's failure to identify Young, resulted in fundamental unfairness to Plaintiff.  (*Id.* at ¶ 32.)

Plaintiff asserts that Defendant violated Rule 26 of the Federal Rules of Civil Procedure in failing to identify Young, and that Defendant offered no justification or excuse for this violation.  (Pl.'s Mot. ¶¶ 29, 30, 34.)  In a Motion in Limine, Plaintiff raised Defendant's failure to identify Young and requested an adverse inference instruction against the Defendant.  We denied the Motion.  Plaintiff argues that she was unfairly prejudiced at trial by Defendant's failure to identify Young, and by the Court's failure to give the adverse inference instruction.  Defendant responds that Young was no longer an employee at J. C. Penney and that it complied with Rule 26 in good faith because Defendant only learned of Young's involvement in the post-accident investigation after the close of discovery, approximately one week before trial.  Plaintiff learned of Young's involvement at the same time.  Defendant argues that Young was equally available to Plaintiff, and Plaintiff could have subpoenaed him for trial or deposed him before trial, but chose not to.  (Def.'s Resp. ¶¶ 28-30.)

Rule 26(a) requires a party to provide its opponent with, "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).

Under Rule 26(e), a party is under a continuing obligation to supplement its discovery responses. If a party fails to identify a witness or make a disclosure that is required under Rule 26, Rule 37(c)(1) provides that, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  In the instant case, Defendant did not interview Young, did not call Young as a witness at trial, and did not use any information from Young at trial.  Nevertheless, Plaintiff sought to have the Court instruct the jury that they may infer that Young's testimony would be adverse to Defendant based upon Defendant's failure to identify Young.

It is well-settled that "if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates a presumption that the testimony, if produced, would be unfavorable." *Graves v. United States*, 150 U.S. 118, 121 (1983); *see also* 2 J. Wigmore, Evidence § 286-88 (3d ed.).  However, such an inference is not permitted if the person in question is equally available to both parties.  *Id*. at § 288.  In addition, failure to call a witness who would provide merely cumulative evidence need not raise an adverse inference.  *United States v. Hines*, 470 F.2d 225, 230 (3d Cir. 1972); *United States v. Restaino*, 369 F.2d 544, 547 (3d Cir. 1966).

In the instant case, Young was a former security supervisor at J.C. Penney.  Verna Powell testified that Young no longer works there.  (1/25/11 Tr. at 28:17-20.)  At the time of the trial, Young was equally available to both parties.  Plaintiff could have subpoenaed Young if she required his testimony.  Moreover, Megan Lamiotte testified regarding all of the relevant information in terms of store security's response to the incident.  Lamiotte testified that she received the initial phone call and was the first security officer to respond to the scene of the

9

accident. (*Id*. at 4:19-5:5.) Lamiotte was responsible for investigating all aspects of the incident except for "the insurance claim part of it." (*Id*. at 5:6-10.) Lamiotte was also responsible for filling out the security report for the incident. (*Id*. at 5:11-13.) Even though Young took the photographs of the scene of the accident, Lamiotte was present when they were being taken, and was able to testify as to their authenticity at trial. (*Id*. at 7:14-11:25.) Plaintiff has not pointed us to any special information that Young would have been able to contribute and we are aware of none. Accordingly, an adverse inference instruction would have been inappropriate. We are satisfied that no fundamental unfairness to Plaintiff has resulted from Defendant's failure to identify Young, or from our refusal to give an adverse inference instruction.

### IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for New Trial will be DENIED.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**